

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

July 13, 2020

**BY ECF AND BY EMAIL**

The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Dragos Diaconu*, 19 Cr. 651 (LTS)

Dear Judge Swain:

    The defendant in the above-captioned case (the "defendant" or "Diaconu") is scheduled to be sentenced on July 21, 2020. The Government respectfully submits this letter in connection with that sentencing. As set forth in the Presentence Investigation Report ("PSR"), the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range applicable to this defendant is two years' imprisonment, to run consecutively to any other term of imprisonment – the statutorily mandated minimum and maximum term of imprisonment. (PSR ¶¶ 75-76, p. 22). The Probation Office recommends that sentence. (PSR at pp. 22-23). For the reasons set forth below, the Government submits that the Court should impose the two-year consecutive mandatory minimum term of imprisonment required by statute.

    **I.**    **Background and Offense Conduct**

    The charges in this case arose out of a multi-year joint New York City Police Department ("NYPD")/Federal Bureau of Investigation ("FBI") investigation into a transnational ATM skimming and money laundering organization (the "Skimming Organization"). (PSR ¶¶ 13-14). Between at least in or about 2014 until at least in or about September 2019, the Skimming Organization built and installed high-technology devices on ATMs and point-of-sale purchasing terminals at stores and elsewhere. (PSR ¶ 14). The Skimming Organization unlawfully obtained victim accountholders' debit card account information by using those advanced technological devices to surreptitiously record the debit card numbers and personal identification numbers at ATMs, and then manufacturing counterfeit and fraudulent debit cards that bore the victim accountholders' account information. (*Id.*). The Skimming Organization's members then used those cards to fraudulently withdraw cash from victims' bank accounts. (*Id.*) The Skimming Organization also laundered the proceeds of unlawful fraud through a network of cash couriers

Hon. Laura Taylor Swain
July 13, 2020
Page 2 of 5

and bank accounts.  (*Id.*)

    At various points, the Skimming Organization consisted of dozens of members, located in the United States and throughout the world, including in Mexico, Peru, Italy, and Romania.  (PSR ¶ 15).  It used advanced technology imported into the United States from, among other places, Mexico, Italy, Romania, China, and Bahrain.  (*Id.*)  Certain members of the Skimming Organization directed or worked in teams that the Skimming Organization deployed across the United States in order to carry out ATM skimming attacks, casing ideal locations for the attacks, installing skimming devices on ATMs, removing those devices, and cashing out large numbers of fraudulent debit cards manufactured as a result of the skimming operations.  (PSR ¶ 16).  Other members of the Skimming Organization assisted in shipping and receiving packages containing skimming devices or component parts from other parts of the United States and from abroad.  (*Id.*)  Other members of the Skimming Organization assisted in engineering the skimming devices that the Skimming Organization used.  (*Id.*)  Still other members of the Skimming Organization laundered the proceeds of the skimming attacks through bank accounts, properties, businesses, and the transportation of bulk cash.  (*Id.*)  The members of the Skimming Organization carried out hundreds of ATM skimming operations across the United States, including in New York and at least 17 other states.  (PSR ¶ 15).

    Diaconu participated in the Skimming Organization primarily by performing "cash-outs" for the Organization.  (PSR ¶ 18).  He participated in cash-outs of cards that were fraudulently obtained from skimming incidents at over fifteen different bank locations throughout Tennessee between approximately June 2, 2018 and June 22, 2018, traveling around to those locations with his co-conspirators as part of cash-outs at First Tennessee Bank locations and Scenic Community Credit Union locations.  (*Id.*)  During the First Tennessee Bank skimming incident, members of the Skimming Organization (including Diaconu) cashed out approximately 1,662 fraudulent cards, resulting in a loss of approximately $528,144.  (*Id.*)  During the Scenic Community Credit Union skimming incident, members of the Skimming Organization (including Diaconu) cashed out approximately 65 fraudulent cards, resulting in a loss of approximately $25,280.  (*Id.*)

    Prior to his arrest in this case, Diaconu was arrested and charged in Davidson County, Tennessee, after he was surveilled participating in a skimming incident there, found in possession of fraudulent cards and cash, and determined to have participated in other cash-outs in Davidson County.  Those cash-outs are excluded from the above description, although that conduct constitutes "relevant conduct," as stipulated in the parties' plea agreement.

    On September 9, 2019, the grand jury returned Indictment 19 Cr. 651 (LTS) (the "Indictment"), charging Diaconu with: (i) conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2) ("Count One"); (ii) conspiracy to commit wire and bank fraud, in violation of Title 18, United States Code, Section 1349 ("Count Two"); and (iii) aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A(a)(1), (b), and 2.  Diaconu, who was in Immigration and Customs Enforcement ("ICE")

Hon. Laura Taylor Swain
July 13, 2020
Page 3 of 5

custody at the time, was writted over to the Southern District, where he arrived on or about November 27, 2019.

## II.     The Defendant's Plea and Applicable Guidelines Range

On February 4, 2020, Diaconu pleaded guilty to Count Three of the Indictment pursuant to a plea agreement (the "Plea Agreement") with the Government.  The Plea Agreement stipulated that the Guidelines sentence for Count Three was the mandatory term of imprisonment required by statute, pursuant to U.S.S.G. § 2B1.6(a), and that that term was a sentence of 24 months' imprisonment, to run consecutively to any other term of imprisonment, pursuant to Title 18, United States Code, Section 1028A.

The Plea Agreement provided that Diaconu was in Criminal History Category I, and that his prior conviction for Vandalism in an Amount Greater than $2,5000 and Less than $10,000, in violation of the Tennessee Code, for which he received a three-year term of imprisonment, constituted "relevant conduct" under the provisions of U.S.S.G. § 1B1.3.

Finally, the Plea Agreement stipulated that Diaconu would pay restitution in the amount of $553,424.  Diaconu signed a Consent Order of Restitution to that effect, which is being submitted to the Court herewith as Exhibit A.[1]

In the PSR, revised on April 28, 2020, the Probation Office also concluded that the defendant's applicable Guidelines range was the two-year mandatory minimum term of imprisonment (the "Guidelines Range"), based on the same calculation set forth in the Plea Agreement.  (PSR ¶ 76, p. 22).  The Probation Office has recommended that sentence – a custodial sentence of 24 months' imprisonment – to be followed by a one-year term of supervised release.  (PSR at pp. 22-23).

## III.    Discussion

In light of the nature and circumstances of the instant offense, Diaconu's history and characteristics, and the applicable mandatory two-year term of imprisonment, the Government respectfully submits that the Court should impose that mandatory sentence in this case.

Diaconu committed serious crimes, causing significant financial loss as part of a sophisticated and vast criminal organization.  He was permitted to plead only to Count Three of the Indictment, in light of certain mitigating factors, including his relatively limited participation in the conspiracy and his swift acceptance of responsibility.  Nevertheless, his repeated

---

[1] As noted in the Consent Order of Restitution, the Government will request at sentencing that the Schedule of Victims attached to Exhibit A be filed under seal, consistent with 18 U.S.C. §§ 3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1.

Hon. Laura Taylor Swain
July 13, 2020
Page 4 of 5

participation in more than fifteen cash-outs as a member of this far-reaching conspiracy warrants the statutorily required sentence of two years' imprisonment.

As to Diaconu's requests regarding the credit he should receive for time served, Section 1028A is crystal clear. It *requires* that the two-year mandatory term of imprisonment run consecutively, not concurrently, with any other term of imprisonment. *See* 18 U.S.C. § 1028A(b)(2) ("[N]o term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person under any other provision of law, including any term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used[.]"); *cf.* 18 U.S.C. § 1028A(b) (courts are not to "reduce" term to be imposed for underlying felony to "compensate for" any separate term of imprisonment to be imposed under Section 1028A). The Government does not dispute that Diaconu may well be entitled to receive credit for time he has served in federal custody since his arrest in this case because he was already serving a term of parole, rather than "imprisonment," on his state sentence (a matter ultimately to be decided by the Bureau of Prisons in computing his sentence). But the Government submits that it defies logic to suggest that time served in immigration custody *prior to his even being charged* in this case should be credited toward Diaconu's sentence in this case. *See* Defendant's Sentencing Submission (Dkt. 284) at 3 (requesting that the Court recommend that Diaconu receive credit for custody beginning August 23, 2019 – weeks before the grand jury returned the Indictment and approximately three months before Diaconu arrived in this District). Diaconu cites no apposite case law or statutory provision supporting such an argument.

Hon. Laura Taylor Swain
July 13, 2020
Page 5 of 5

## IV. Conclusion

The Government respectfully submits that the applicable Guidelines range (the statutorily mandated two-year term of imprisonment) is a fair and appropriate sentence in this case, and is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

    Respectfully submitted,

    AUDREY STRAUSS
    Acting United States Attorney

By: _____
    Elizabeth A. Hanft
    Daniel M. Loss
    Samuel P. Rothschild
    Robert B. Sobelman
    Assistant United States Attorneys
    (212) 637-2334/6527/2504/2616

cc: Valerie Gotlib, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA                    **Consent Order of Restitution**

v.

DRAGOS DIACONU                              Docket No. 19 Cr. 651 (LTS)

---

Upon the application of the United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, Elizabeth A. Hanft, Assistant United States Attorney, of counsel; the presentence report; the Defendant's conviction on Count Three of the above Indictment; and all other proceedings in this case, it is hereby ORDERED that:

1. **Amount of Restitution**

Dragos Diaconu, the Defendant, shall pay restitution in the total amount of $553,424, pursuant to 18 U.S.C. § 3663, to the victims of the offense charged in Count Three. The names, addresses, and specific amounts owed to each victim are set forth in the Schedule of Victims, attached hereto as Schedule A. Upon advice by the United States Attorney's Office of a change of address of a victim, the Clerk of the Court is authorized to send payments to the new address without further order of this Court.

   A. **Joint and Several Liability**

Restitution is joint and several with any defendant ordered to make restitution for the offenses in this matter under 19 Cr. 651 (LTS), up to a total of $11,420,427.93. The Defendant's liability for restitution shall continue unabated until either the defendant has paid the apportioned amount set forth below, or every victim has been paid the total amount of loss from all the restitution paid by the defendants in this matter.

1

| Defendant | Apportioned Amount of Restitution |
|---|---|
| Dragos Diaconu | $553,424 |

  **B.** **Apportionment Among Victims**

Pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid. Restitution shall be paid to the victims identified in the Schedule of Victims, attached hereto as Schedule A, on a pro rata basis, whereby each payment shall be distributed proportionally to each victim based upon the amount of loss for each victim, as set forth more fully in Schedule A.

  2. **Schedule of Payments**

Pursuant to 18 U.S.C. § 3664(f)(2), in consideration of the financial resources and other assets of the Defendant, including whether any of these assets are jointly controlled; projected earnings and other income of the Defendant; and any financial obligations of the Defendant; including obligations to dependents, the Defendant shall pay restitution in the manner and according to the schedule that follows:

In the interest of justice, restitution shall be payable in installments pursuant to 18 U.S.C. § 3572(d)(1) and (2). While serving the term of imprisonment, the Defendant shall make installment payments toward his restitution obligation, and may do so through the Bureau of Prisons' (BOP) Inmate Financial Responsibility Plan (IFRP). Pursuant to BOP policy, the BOP may establish a payment plan by evaluating the Defendant's six-month deposit history and subtracting an amount determined by the BOP to be used to maintain contact with family and friends. The remaining balance may be used to determine a repayment schedule. BOP staff shall help the Defendant develop a financial plan and shall monitor the inmate's progress in meeting his restitution obligation. Any unpaid amount remaining upon release from prison will be paid in

2

installments in an amount equal to ten percent of the Defendant's gross income on the first of each month.

If the Defendant defaults on the payment schedule set forth above, the Government may pursue other remedies to enforce the judgment.

**3.    Payment Instructions**

The Defendant shall make restitution payments by certified check, bank check, money order, wire transfer, credit card or cash. Checks and money orders shall be made payable to the "SDNY Clerk of the Court" and mailed or hand-delivered to: United States Courthouse, 500 Pearl Street, New York, New York 10007 - Attention: Cashier, as required by 18 U.S.C. § 3611. The Defendant shall write his name and the docket number of this case on each check or money order. Credit card payments must be made in person at the Clerk's Office. Any cash payments shall be hand delivered to the Clerk's Office using exact change, and shall not be mailed. For payments by wire, the Defendant shall contact the Clerk's Office for wiring instructions.

**4.    Additional Provisions**

The Defendant shall notify, within 30 days, the Clerk of Court, the United States Probation Office (during any period of probation or supervised release), and the United States Attorney's Office, 86 Chambers Street, 3rd Floor, New York, New York 10007 (Attn: Financial Litigation Unit) of (1) any change of the Defendant's name, residence, or mailing address or (2) any material change in the Defendant's financial resources that affects the Defendant's ability to pay restitution in accordance with 18 U.S.C. § 3664(k). If the Defendant discloses, or the Government otherwise learns of, additional assets not known to the Government at the time of the execution of this order, the Government may seek a Court order modifying the payment schedule consistent with the discovery of new or additional assets.

5.   **Restitution Liability**

The Defendant's liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the Defendant's release from imprisonment, as provided in 18 U.S.C. § 3613(b). Subject to the time limitations in the preceding sentence, in the event of the death of the Defendant, the Defendant's estate will be held responsible for any unpaid balance of the restitution amount, and any lien filed pursuant to 18 U.S.C. § 3613(c) shall continue until the estate receives a written release of that liability.

6.   **Sealing**

Consistent with 18 U.S.C. §§3771(a)(8) & 3664(d)(4) and Federal Rule of Criminal Procedure 49.1, to protect the privacy interests of victims, the Schedule of Victims, attached hereto as Schedule A, shall be filed under seal, except that copies may be retained and used or disclosed by the Government, the Clerk's Office, and the Probation Department, as need be to effect and enforce this Order, without further order of this Court.

AGREED AND CONSENTED TO:

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Elizabeth A. Hanft
One Saint Andrew's Plaza
New York, NY 10007
Tel.: (212) 637-2334

2/4/20
DATE

DRAGOS DIACONU

By: _____
Dragos Diaconu

02/04/2020
DATE

4

By: _____       _____
Valerie Gotlib                                                      DATE
225 Broadway, New York, NY 10007
Tel: (917) 536-8171

SO ORDERED:

_____      _____
HONORABLE LAURA TAYLOR SWAIN      DATE
UNITED STATES DISTRICT JUDGE

5